**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Sonia Maria Molina**, individually and on behalf of the conjugal partnership comprised by her and her spouse Edwin Molina Ramos, and family members Caty Molina Irizarry, Yuisa Molina Irizarry and Urayoan Molina Irizarry. *Plaintiffs*<br><br>v.<br><br>**Patrick R. Donahoe, Postmaster General US Postal Service,** Elvin Duran and Luis Sotomayor; all of the above named Defendants acting in their official and individual capacities and on behalf of their respective conjugal partnerships comprised by them and their respective spouses. *Defendants* | CIVIL ACTION<br><br>Case No. 14-1599<br><br>DISCRIMINATION COMPLAINT<br><br>**Demand for Jury Trial /Jury Demand**<br><br>Plaintiff herby demands a trial by jury for the case. |

## COMPLAINT

### I.      INTRODUCTION

### Preliminary Statement

1.      This is a civil action challenging the unlawful failure of the United States Postal Service ("USPS") to accommodate its employee's disability and Supervisor's discriminatory actions based on her age and retaliation for EEO activities.  Plaintiff Sonia Maria Molina, a thirsty one (31) year veteran of the Postal Service, and Distribution Window Clerk for the Caribbean Postal District, suffers from medical conditions in her back, including cervical and lumbar areas, hips and shoulders, fibromyalgia and depression.  Most of these were diagnosed as early as 2007, and included lumbar and cervical sprain, muscular spasm, lumbar spondylosis, and mild degenerative disk disease, among others, which were fully aware to her employer by 2009, and some properly identified as occupational injuries.  Ms. Molina's physicians issued work restrictions.  As a reasonable accommodation for her disability, Ms. Molina sought to be

assigned to a position, such as lobby director, which in fact was available at her Post Office, which would comply with her doctor's restrictions.  At the very least, she expected her employer to properly respect physician's work restrictions for her position as Distribution Window Clerk.  (Statute defines "a qualified person with disability" as a person with disability who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §12111(8) (1994)).  Defendant's ignored Ms. Molina's repeated documented requests for accommodation and subjected her to discriminatory treatment which eventually forced her separation from employment with the USPS.  Although, the USPS was aware of Ms. Molina's work restrictions as early as 2009, they failed to take proper action until the U.S. Department of Labor required them to do so by the end of 2012.  By then, Ms. Molina's health had continued to deteriorate as a result of the repetitive motions and the lack of reasonable accommodation given by the USPS.

2.      On at least four (4) separate occasions: 2009, January 2011, December 2011 and January 2012, Ms. Molina asked the USPS to comply with physician's work related medical restrictions.  The USPS Supervisor and San Sebastian Post Office Postmaster instead, retaliated against Ms. Molina for requesting accommodation and filing an EEO Complaint to that effect.  Ms. Molina respectfully asks this Court to find Defendant's treatment of her in violation of the Americans with Disability Act, the Rehabilitation Act of 1973, and the Age Discrimination in Employment Act, as amended, and in violation of Puerto Rico Commonwealth's statutes, and to award the relief requested below.

3.      Defendants violated Ms. Molina's rights under federal law protecting workers from discrimination on the basis of her age and her disability.  Defendant further violated Ms. Molina's rights by taking retaliatory action for exercising her legal rights.  Defendants are jointly

and severely liable for violating Ms. Molina's rights under federal and Puerto Rico law.  Plaintiff seeks reinstatement, back pay and benefits, compensatory damages, and reasonable attorney fees.

## II.    JURISDICTION

4.    This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §12101 et. seq., codified 42 U.S.C. §§12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), the Rehabilitation Act of 1973, 29 U.S.C. §701 et. seq. and the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166), and this Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from the same nucleus of operative facts as Plaintiff's federal claims.

5.    Venue properly lies before this Court under 28 U.S.C. §1391(b).  Plaintiff and Defendants are resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to Plaintiff's claim have occurred in this district.  A substantial part of the events giving rise to this suit arose on the premises of the USPS, located in the Commonwealth of Puerto Rico.  Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

6.    Prior to filing this lawsuit, Ms. Molina filed a timely written charge with the Equal Employment Opportunity Commission ("EEOC"), where she notified the USPS EEO"s office and indicated discrimination based on her age, her disability and the USPS retaliation for her EEO activity.  These charges placed Defendant USPS on notice of her claim under federal employment discrimination statutes, such as the Americans with Disability Act, the

Rehabilitation Act of 1973, and the Age Discrimination in Employment Act.  The charges before the EEO explained that Ms. Molina's doctor placed her on work restrictions and the USPS refused to allow her to continue work with restrictions or give reasonable accommodation.  She received a Notice of Final Action, which is included with this complaint.  See **Exhibits A | B | C.**

7.      During May 2014, the EEOC issued a notice of final action.  Ms. Molina has filed this action within 90 days of her receipt of the Postal Services' final decision.  Accordingly, Ms. Molina has exhausted all administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed.  Ms. Molina strongly disagrees with the Agency's decision.

## IV.      PARTIES

8.      Plaintiff Sonia Maria Molina ("Sonia") is a citizen of San Sebastian, Puerto Rico and at all relevant times was employed by the United States Postal Service in the Commonwealth of Puerto Rico.  She is a thirty one (31) year veteran of the Postal Service and worked as Distribution Window Clerk, PS-06, for the San Sebastian Post Office of the U.S. Postal Service. She is an "individual with a disability" within the meaning of 29 U.S.C. §705(20) (A).  She resides in the judicial District of Puerto Rico.

9.      Plaintiff Edwin Molina Ramos (65) is Sonia Maria Molina husband, and Plaintiff Caty Molina Irizarry (36), Yuisa Molina Irizarry (35) and Urayoan Molina Irizarry (32), are siblings of Ms. Molina.

10.      Defendant Patrick R. Donahoe is the Postmaster General of the United States Postal Service ("USPS").  He is sued as the head of the United States Postal Service.  Defendant USPS operates facilities within the judicial District of Puerto Rico.

11.      Defendant Elvin Duran ("Supervisor") was at all times relevant to the complaint, thirty three (33) years of age and Plaintiff's immediate supervisor.  Mr. Elvin Duran is Supervisor Customer Service, EAS-17, at the San Sebastian Post Office, in San Sebastian, Puerto

Rico.  As Supervisor and representative of the USPS he is made a party to this action in that capacity.  He is a resident of Puerto Rico.

12.     Defendant Luis Sotomayor ("Postmaster") was at all times relevant to the complaint, forty nine (49) years of age and Plaintiff's San Sebastian Post Office Postmaster, ESA-21.  As Postmaster and representative of the USPS he is made a party to this action in that capacity.  He is also a resident of Puerto Rico.

13.     Defendants are employees, agents, and/or supervisory personnel of the USPS and were, at all times material to this complaint, acting in the course and scope of their employment. Defendants participated in and/or directed the unlawful violations alleged herein, or knew of the violations and failed to act or prevent them.  At all times relevant to this complaint, Defendants all acted under color of federal and/or state law and acted in the course and scope of their employment.  All individual Defendants are jointly liable for monetary damages alleged herein.

## IV.     FACTUAL ALLEGATIONS

14.     Plaintiff Sonia Maria Molina, who is currently fifty four (54) years of age, began working as a Distribution Window Clerk for Defendant United States Postal Service on May 17, 1980, in the San Sebastian Post Office, in San Sebastian, Puerto Rico.  She worked for the USPS for over thirty one (31) years.  While working for the USPS she suffered work-related injuries and was diagnosed with medical conditions related to her back, including the cervical and lumbar areas, hips and shoulders, fibromyalgia and depression.  Finally, on October 4, 2012, she was also diagnosed with shoulder bursitis.  On a letter dated April 8, 2009, she asked her employer to give her reasonable accommodation.  After enduring discrimination from her USPS supervisor and Postmaster because of her disability and their noncompliance with her medical restrictions, she was unlawfully forced to separate from the postal service in May 10, 2013. Between 2009 and 2012 the USPS never complied with her medical restrictions, while causing

her physical health and mental wellbeing to deteriorate.  USPS failed to provide reasonable accommodation in time and retaliated against her because she complained of discrimination.

15.     Plaintiff Sonia Maria Molina can and will present before this Court a *prima facia* case of discrimination in the workplace because of her age, her disability and also retaliation for exercising her legal rights in order to request reasonable accommodation from the USPS and compliance with medical restrictions for work, as mandated by the U.S. Labor Department.  The evidence will show and the Court will find defendants conduct was discriminatory with respect to plaintiff's age (31 years of service) and her known disabilities (since 2009) by the employer.

**Plaintiff Injured Her Body at Work and Became Disabled**

16.     While at the USPS Ms. Molina sustained injuries as a result of a work-related accident which injured her lumbosacral spine.  Ms. Molina later on suffered yet another work-related injury, including a thoracic sprain.  Exacerbating her physical conditions.  In addition, the U.S. Department of Labor accepted Ms. Molina's August 2009 claim related to injuries sustained in 2008 for aggravation of lumbar sprain and aggravation of cervical sprain.  These work injuries undergo recurrence and were known to her employer, the USPS.  Ms. Molina's supporting medical documents allowed the employer to know of a real and/or perceived disability by her.

17.     On January 7, 2012, while working at the USPS Ms. Molina felt pain along the lateral border of the right shoulder radiating to her right elbow and her right hand.  The excruciating pain was caused by the repetitive sorting of incoming mail.

18.     On January 20, 2012, Ms. Molina was evaluated by Dr. Joanne Gonzalez.  Based on her evaluation and an X-ray, Dr. Gonzalez reached the conclusion that Ms. Molina showed symptoms of osteophytes in the lumbar spine, among other medical conditions.  Ms. Molina then underwent an MRI of her right shoulder on February 6, 2012, and was ordered to take 26 physical therapy sessions.  Rheumatologist Dr.Varela Rosario diagnosed myalgia, myositis and

joint pain.   Due to her lack of improvement, Ms. Molina was referred to Dr. Carlos Perez Cardona, an orthopedic surgeon.   Dr. Perez-Cardona examined Ms. Molina on March 6, 2012, and diagnosed her with chronic right shoulder pain, overuse syndrome, and a right shoulder chronic rotator cuff calcific tendinopathy, which was confirmed by MRI.   Dr. Perez-Cardona opined that these were the result of repetitive motions at work involving the shoulder joint and rigid postures.   Prior to these findings, on February 2, 2012, she promptly filed a Claim for the work-related injuries she sustained on January 7, 2012, while working at the USPS.

19.     On October 4, 2012, Dr. Fernando Rojas, an orthopedic surgeon, performed a medical evaluation of Ms. Molina for the U.S. Department of Labor.   Dr. Rojas concluded that the aggravation of calcific tendonitis (calcifying tendinitis) on her right shoulder and arthritis AC joint failed to cease with treatment.   Dr. Rojas further opined that Ms. Molina had disability partly due to an aggravation of calcific tendonitis of her right shoulder.   Dr. Rojas also indicated in his report that Ms. Molina had disability, although non-work related, from fibromyalgia and cervical osteoarthritis.   It was Dr. Rojas conclusion that Ms. Molina could return to work in a clerical job that did not require her to reach over the shoulders or carrying, pushing and handling load of more than 20 pounds.   Dr. Rojas further opined that Ms. Molina could walk, bend, stoop, climb and do repetitive tasks with her elbows and the wrists.   On the U.S. Department of Labor *Work Capacity Evaluation Form,* dated October 4, 2012, Dr. Rojas indicated that she had work-related medical restrictions, but could return to work.   Based on the report and opinion of Dr. Rojas, on December 4, 2012, the U.S. Department of Labor ordered the USPS to comply with restrictions.

20.     Ms. Molina acquired most of her physical injuries while working for the USPS. Some were diagnosed by 2007, and were known to her employer.   Ms. Molina timely asked the USPS for reasonable accommodation in 2009, January 2011, December 2011 and January 2012.

21.    Although, Ms. Molina's physical condition limits her major life activities and she is disabled, she has at all times been able and willing to do the essential functions of her job as a USPS clerk with reasonable accommodations.  Ms. Molina's doctor permitted her to return to work with restrictions.  Ms. Molina was always allowed to return to work by her physicians.  However, Ms. Molina's supervisor willfully denied her reasonable accommodation until 2012.

### Requests for Reasonable Accommodations Timely Denied

22.    On April 8, 2009, she requested reasonable accommodation from the USPS.

23.    On May 2012 she requested light duty which allowed her to work within her restrictions.  The USPS refused to accommodate her disability and her Supervisor shut down the interactive process.  A process mandated by the US Postal Service Reasonable Accommodation Handbook, EL-307, October 2008.  Ms. Molina was forced to take a sick leave without pay because of her physical conditions.  During July 20, 2012, when she asked her supervisor about the status of her request, Postmaster Sotomayor made derogatory comments to her and humiliated her by indicating that he would only allow her to work one (1) to two (2) hours per day.  Among the remarks made by the Postmaster were "fire you like a piece of crap" and "I prefer you to retire".  Interestingly, the U.S. Department of Labor accepted Ms. Molina's case just a few days later, on July 24, 2012, and later sent her to Dr. Rojas for a medical evaluation in October 2012.

24.    Around the same time her personal PO Box was involuntarily closed and her mail returned to senders, which may have included EEO correspondence.  She also noticed that her supervisor intentional or negligently listed her as "sick pay" even though, she was not getting paid and no sick leave was filled out.  The information given by her Supervisor regarding her status was erroneous, given that she received blank paystubs.  This situation gave the wrong

impression of making Ms. Molina's conduct dishonest.  Because of this Ms. Molina suffered depression which required partial hospitalization for five days on or about September 4, 2012.

25.     Shortly after, on October 2, 2012, Ms. Molina requested work reinstatement as lobby director from the San Sebastian Postal Office Postmaster Sotomayor.  However, on October 3, 2012, Mr. Sotomayor informed her that her supervisor, Mr. Duran, had indicated that he did not want to give that position to her.  He further shared Mr. Duran's comments indicating that the preferred that Ms. Molina retire so that he could give the position to someone who could work all the time.

26.     Her immediate supervisor's age was thirty three (33) at the time, and his conduct clearly demonstrated blatant disregard for the rights of a senior clerk and fellow postal workers.

27.     Finally, in accordance with U.S. Labor Department's instructions, on December 17, 2012, she was offered a light duty position and returned to work on December 18, 2012, working eight (8) hours per day.  Ms. Molina continued working from December 2012 through May 2013, for approximately five months until her hip pain interfere with her work.  Ms. Molina notices that her Supervisor routinely removed her work chair claiming it to be a "safety hazard for the clients".  After enduring several months of persistent lack of disregards for her medical restrictions, Ms. Molina was forced to leave her employment on May 10, 2013.  Shortly after, a younger worker, approximately thirty seven (37) years of age, was given the lobby director position sought by Ms. Molina.  There were in fact, other positions available at the San Sebastian Post Office that also fell within Ms. Molina's medical restrictions.   Where she could have performed the essential functions and the USPS complied with her reasonable accommodation.

28.     Ms. Molina would like to point out to the Court that her request for reasonable accommodation also dates back to April 28, 2009, when the District Reasonable Accommodation Committee was made aware of her referral for reasonable accommodation.  However, the USPS

never fully complied with her medical restrictions, even though the U.S. Department of Labor issued an order on December 4, 2012, requiring the USPS to comply with medical restrictions at work as mandated by medically provided temporary work tolerances and limitations.  However, the Supervisor and Postmaster's reasonable accommodation for Ms. Molina were not effective.

### Failure to Accommodate

29.     Ms. Molina brings a claim under the Rehabilitation Act of 1973 and/ADA because USPS discriminated against her by failing to reasonably accommodate her disability.  Ms. Molina has a cognizable cause of action for discrimination under the Rehabilitation Act of 1973 and/or ADA because (1) she is a disabled person within the meaning of the Rehabilitation Act of 1973 and/or ADA; (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of the discrimination.  The Court will find that Ms. Molina has alleged sufficient facts regarding her claimed and/or perceived disability, her status as a qualified individual, or an adverse employment decision, including unpaid leave and denial of reasonable accommodation based on a discriminatory factor such as her disability, among others.  Under the notice pleading standards of the Federal Rules of Civil Procedures, this is sufficient at this preliminary stage.  See Shaner v. Synthes, 204 F. 3d494, 500 (3d. Cir. 2000); Shumacker v. Souderton Area Sch. Dist., No. Civ. A. 99-1515, 2000 WL 72047, at *8 (E.D. Pa. Jan. 21, 2000).

### Administrative Exhaustion and Retaliation

30.     Ms. Molina filed her administrative EEO Complaint challenging USPS decision that she was not offered a reasonable accommodation for a light duty assignment based on discrimination, because of her age, disability, and retaliation for her EEO activity.  Ms. Molina

was notified recently by the EEO by way of a Notice of Final Action.  Based on Ms. Molina's disagreement with the agency's decision issued in May 2014, she timely files this civil action.

31.     Ms. Molina was employed by the USPS service for several decades and gave to the USPS most of her productive years, only to be discarded in the end by a young Supervisor who showed blatant disregard for her legal rights.  The USPS noncompliance with her medical restrictions over several years caused exacerbation of her work-related injuries and contributed to a severe decline in her physical and mental health.  Ms. Molina and her immediate family has suffered mental anguish and economic loss associated with her loss of employment.

32.     Even though the Plaintiff promptly requested her employer to make reasonable accommodation for her disability, as mandated by the law; Defendant's failure to comply constituted a form of prohibited discrimination under the Rehabilitation Act.

33.     The San Sebastian Postal Office Supervisor and Postmaster, intentionally and/or negligently engaged in discriminatory conduct by practically putting her off the clock, making humiliating remarks because of her disability, and failing to comply with medical restrictions.

34.     After initiating her EEO counseling request on January 11, 2012, Ms. Molina's Equal Employment Opportunity (EEO) Case was formally filed on April 16, 2012, alleging discrimination by the USPS, specifically her Supervisor Elvin Duran, based on her age and disability.  Ms. Molina notified the EEO that on December 28, 2011, she indicated to Supervisor Duran and Postmaster Sotomayor that she was not feeling and needed to leave work to go to a physician for a check-up.  Supervisor Duran immediately told her "the problem is you don't want to work" and further said to her that "I hope you never come back" and finally said, "goodbye, we don't' need you."  Even though, Ms. Molina was in excruciating pain after having worked for two hours straight distributing mail, given the accountable to the carriers, rural routes and HWY contracts, Supervisor Duran sent Ms. Molina to work for 20 minutes on the PO Boxes and later

sent her to the Customer Window, knowing full well her ongoing back pain condition, which included burning sensation in her back muscles, legs and general dizziness because of her medications.   When Ms. Molina notified Supervisor Duran that she was leaving, to go see a physician and will likely not be back the following day, at approximately 4:00 pm that day, Supervisor Duran handed Ms. Molina a letter for a Pre Disciplinary Interview (PDI) for failure to follow instructions and to maintain regular attendance, which was schedule to take place on December 30, 2011.   When Ms. Molina indicated to Supervisor Duran that she would return to work when the physician said so, Supervisor Duran response was "I hope you never come back". When Ms. Molina replied that she had at least three (3) more years to work before retirement, Supervisor Duran's response was "Ok! Goodbye! We don't' need you."   This remark was made to her by Supervisor Duran in a disrespectful and hostile manner, creating serious discomfort in her work environment and total disregard for the medical restrictions of a thirty one (31) year veteran of the Postal Service.

35.     Ms. Molina was forced to endure exhausting administrative processes while the USPS prolonged the situation aggravating her disability.   She was left with no other option but to file this suit.   To attempt to imply in any way by the USPS that accommodating her medical restrictions would have caused an undue hardship on the USPS is short of blasphemy.   Ms. Molina never asked for unreasonable accommodation at work, simply the same kind afforded by the USPS to many elderly and/or disabled life-long postal workers all over the U.S.   As a national employer afforded unparalleled protection of the law, the USPS had both the expertise and the resources to modify work requirements to enable a disabled individual such as the Plaintiff to continue working for the remaining of her time until retirement.   Instead, the largest centralized mail carrier in the U.S., misguidedly chose to make her a ridiculous and humiliating

offer of seven hundred and fifty dollars ($750.00), after having Ms. Molina endured years of pain and mistreatment by a Supervisor who forced her to leave her employment in pain and shame.

36.     The Plaintiff now comes before this Court to seek only what is deem to be fair and just, thru reasonable compensation for damages as a result of her employer's willful deprivation of her meaningful employment after 31 years of service to the U.S. Postal Service.

## V.     CAUSES OF ACTIONS

### COUNT I: Failure to Accommodate (29 U.S.C. §794)

37.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

38.     Defendant discriminated against Plaintiff on the basis of a perceived or actual disability and failed to reasonably and timely accommodate Plaintiff's disability, as required by the Rehabilitation Act, 29 U.S.C. §794.

### COUNT II: Violation of the Americans with Disabilities Act (42 U.S.C. §12101 et. seq.) and The Rehabilitation Act of 1973

39.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

40.     The Americans with Disabilities Act, as amended, 42 U.S.C. §12101 et. seq., prohibits employers from discriminating against people with disabilities in employment, including failing to make reasonable accommodations to known physical limitations of otherwise qualified individuals with disabilities, unless the employer can demonstrate that the accommodation would impose an undue hardship.  The Americans with Disabilities Act of 1990, as amended ("ADA"), makes it illegal to discriminate against qualified persons with disabilities. The law also makes it illegal to retaliate against a person because he or she made a complaint or filed a charge of discrimination.  Similarly the Rehabilitation Act of 1973, applies to the case.

41.     Defendant knew or had reason to know of Ms. Molina's disability.

42.     Ms. Molina suffered adverse employment action which includes the USPS failure to make reasonable accommodation.  Discrimination encompasses not only adverse actions motivated by prejudice, but also failing to make reasonable accommodation for a plaintiff's known disabilities.  See Taylor, 184 F. 3d at 311; 42 U.S.C. §12112 (b) (5) (A) (1994).  Ms. Molina's employer ignored or denied her repeated requests despite knowledge of her disability.  Ms. Molina's claim satisfies all the elements for a claim of discrimination under the Rehabilitation Act of 1973 and/or ADA.

43.     Ms. Molina was able to perform the essential functions of her job with or without a reasonable accommodation.  Ms. Molina however, was able to perform her essential functions in accordance with physician's work restrictions.  Ms. Molina is a qualified individual who had a disability during the period in question and the reasonable accommodation requested by Ms. Molina would not have imposed an undue hardship on Defendant.  The USPS routinely grants such accommodations to other employees with similar work restrictions because of disability.

44.     By denying Ms. Molina a reasonable accommodation and forcing her to take unpaid leave, Defendant violated her rights under the Americans with Disabilities Act and/or the Rehabilitation Act of 1973.  Defendant further violated her rights because they knew about Ms. Molina's medical restrictions but told Ms. Molina that she could not work with restrictions.  Although, Ms. Molina promptly submitted documentation required to substantiate her request for reasonable accommodation, Defendant took adverse employment action against her by requiring her to take unpaid leave, even though she was otherwise qualified to continue working with reasonable accommodation.

45.     Defendant unlawfully forced Ms. Molina away from employment based on her impairment or perceived impairment.  Defendant discriminated against Plaintiff on the basis of a

perceived or actual disability and failed to reasonably accommodate Plaintiff's disability, as required as well by the Rehabilitation Act, 29 U.S.C. §794.

46.     Defendants are jointly and severally liable.

**COUNT III: Violation of the Age Discrimination
in Employment Act (29 U.S.C.A. §621 et. seq.)**

47.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

48.     Defendant discriminated against Plaintiff on the basis of her age, after thirty one (31) years of service to the USPS.

49.     The Age Discrimination in Employment Act, as amended ("ADEA"),, 29 U.S.C.A. §621et. seq., makes it illegal to discriminate against qualified persons at work because of their age.

50.     Ms. Molina was approximately 52 years of age at the time of these incidents, and was born in 1959.

51.     Supervisor Elvin Duran was approximately 33 years old at the time of these incidents and had only worked as Supervisor at the San Sebastian Post Office for several months prior to these incidents.  Ms. Molina had to report to Supervisor Elvin Duran, as her immediate supervisor.

52.     Postmaster Luis Sotomayor was approximately 49 years old at the time of these incidents and was appointed San Sebastian Post Office's Postmaster on June 21, 2008.

53.     Ms. Molina's age played a factor in USPS refusal to accommodate her medical restrictions in order to provide her reasonable accommodation, given Supervisor Duran specific comments about Ms. Molina with regards to not needing her anymore in the workplace, and refusing to grant her request of light duty, in order to give such to someone else able to perform all the tasks all of the time, as informed to Ms. Molina by Postmaster Sotomayor.

15

54.     Based exclusively on the amount of years worked for the USPS Defendant knew or had reason to know Ms. Molina belong to a protected group because of her age.

## COUNT IV: Disability Harassment

55.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

56.     Her permanent disability consisted in suffering from medical conditions known as lumbar and cervical sprain/spawn diagnosis, right shoulder supraspinatus tendinpathy/biceps tendon inflammation, myalgia and myositis and joint pain.  Among other conditions, that also included work-related injuries.

57.     Core duties of her current position as distribution window clerk included manual distribution, PO Box distribution, notifying parcels, certifieds, mark-up, dispatch morning and afternoon, and window assignment.  Ms. Molina was unable to continue performing core duties of her position due to pain, inflammation, muscle spasm, and by medical recommendation.  She has a history of back injuries which originated by the end of the 1980's.  During 1987 she injured her back at work and received medical treatment.  This condition aggravated by 2007.

58.     Her physical impairment flared up and got worse because of the repetitive movements, continuous standing for more than one hour, rigid posture, sitting or standing for long periods or when she walked for more than thirty (30) minutes.  She required ongoing visits to physiatrist, rheumatologist, neurologist, psychologist and psychiatrists for the treatment of her medical condition.

59.     As a result, she continues to experience pain on her body, she is unable to continue with her house chores, and finds it even more difficult to do life activities like the average person.  Her husband and daughter have had to assist in many ways and have suffered mental anguish, by watching Ms. Molina's health deteriorate.

60.     Ms. Molina notified her supervisor Elvin Duran and Postmaster Luis Sotomayor of her medical conditions and use the duty status report (Form 17) for this purpose, stating her medical restrictions.  Medical documents related to most of her physical conditions were given to management in 2007.

61.     Ms. Molina's disability discrimination claim consists of the USPS denial of reasonable accommodation, even though her requests date back to 2009, January 2011, December 2011, and January 2012.  The only request made was for her medical restrictions to be put into practice by the USPS and to be assigned to work the number of hours ordered by the physicians, which would have allowed her to perform the core functions of her job, without putting so much strain on her shoulders and her back.  The repetitive movements would not have been for prolonged periods of time.  Specifically physicians ordered repetitive tasks not to take longer than 30 minutes, however, USPS management required her to do so for a long period of four (4) hours.  Postmaster Sotomayor informed Ms. Molina verbally during December 2011 and again January 2012, that management would not honor her medical restrictions, given that the U.S. Labor Department had not accepted her case yet.  Even tough, on December 27, 2011, a Chiropractic physician recommended a maximum of five (5) hours of work per day, due to the repetitive movements of her job position as Window Clerk.  Even while taking therapy, her physical condition seems to deteriorate.  Meanwhile, USPS management refused to comply with other restrictions such as sitting, standing, walking, climbing, kneeling, bending/stooping, twisting, pulling/pushing, simple grasping, find manipulation, and reaching above her shoulders.  Due to management's refusal to comply with restrictions, her physical condition worsened.

62.     During the investigation of her claim by the EEOC supervisor Elvin Duran falsely denied having knowledge of Ms. Molina's medical conditions and her request for reasonable accommodation.  Postmaster Sotomayor, who was fully aware since 2009, of Ms. Molina's

physical conditions, falsely alleged Ms. Molina never gave the USPS medical documentation to support her request for reasonable accommodation.  Postmaster Sotomayor refused to offer Ms. Molina a modified light duty assignment and refused to comply with her medical restrictions, conveniently claiming Ms. Molina simply could not perform any of the core duties of her position based precisely on her medical condition.

63.    On April 27, 2012, Ms. Molina gave Postmaster Sotomayor a CA-17 form, which was provided by Sotomayor himself, where her physician indicated her work restrictions. However, Postmaster Sotomayor refused to accommodate her restrictions by way of reasonable accommodation, because according to him, she could not work at the retail window with all the restrictions, without delaying carrier's leaving time and making customers wait to be served.

64.    On April 30, 2012, Ms. Molina wrote to Postmaster Sotomayor requesting a light duty assignment.  However, Postmaster Sotomayor denied her request and refused to comply with Ms. Molina's medical restrictions, claiming she simply could not do the core duties of the job and there was simply no more work for her to do at the USPS.  Management failed to take proper actions to comply with Ms. Molina's doctor issued work restrictions, and such inaction contributed to her decreased health.

65.    Supervisor Duran further humiliated Ms. Molina by commenting discriminatory remarks about her, such as "I hope you never come back and goodbye, we don't need you."

66.    Ms. Molina also asserts that Defendants unlawfully harassed her on the basis of her disabilities.  This cause of action for a hostile work environment also arises under the Rehabilitation Act of 1973 and/or ADA, because Ms. Molina can show that (1) she is a qualified person with disability; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working

environment; and (5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action.  See Walton v. Mental Health Ass'n., 168 F.3d at 667 (3d Cir. 1999).

67.     Ms. Molina was forced to take an unpaid leave for several months because a Supervisor's refusal to promptly grant reasonable accommodation, and was later notified by a Postmaster that USPS refused to grant her request for a light duty or reasonable accommodation in May 2012, because there was simply no work for her precisely because of her disability. These are two specific instances of harassment.  The USPS refused to take remedial steps because of its perception of Ms. Molina's disability.  A reasonable inference can be made that the unlawful conduct was severe or pervasive harassment based on her disability, and her employer failed to remedy the situation.  The Court will find here sufficient allegations to sustain a cause of action for disability harassment under the Rehabilitation Act, 29 U.S.C. §794, as well.

### COUNT V: Retaliation (29 U.S.C. §794) (29 USCA §215 (a) (3))

68.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

69.     On January 2012, USPS became aware of Ms. Molina's EEO complaint.

70.     On April 27, 2012, Ms. Molina gave Postmaster Sotomayor a PS Form 17 Duty Status Report, requesting a light duty work assignment.  However, shortly after Postmaster Sotomayor informed Ms. Molina that her request for light duty was denied, because according to him, there was no work for her in the Post Office.  This was in retaliation for having filed an EEO complaint for discrimination based on her age and disability, in order to obtain from her employer reasonable accommodation at work.  This became obvious to Ms. Molina, when Supervisor Duran and Postmaster Sotomayor made public humiliating remarks to her, such as "I hope you never come back" and "goodbye, we don't need you".

71.     On May 1, 2012, Ms. Molina gave a written request to Postmaster Sotomayor, requesting the light duty.  Because according to Postmaster Sotomayor, the forms given to her, by him nonetheless, were not the proper ones that had to fill out by her physician.  Postmaster Sotomayor, however, insisted there was no light duty assignment available for her based on her restrictions.  This proved to be totally false, as Postmaster Sotomayor later on July 9, 2012, offered Ms. Molina work a humiliating offer of a schedule limited to only one (1) hour per day. This after Ms. Molina filed an EEO Complaint to include retaliation.  The drastic reduction of working hours, non-compliance with medical restrictions and hostile work environment was based solely because of her age and disability.  The USPS ongoing refusal to provide reasonable accommodation to Ms. Molina, even after her claim was eventually accepted by the U.S. Department of Labor and she had to file an EEO complaint, constitutes retaliation. As part of retaliation she was also force to take unpaid sick leave, which her Supervisor wrongfully listed as paid leave, her PO Box was closed and personal mail, including EEO correspondence, returned.

72.     Defendant retaliated against Plaintiff for engaging in statutorily protected activity under the Rehabilitation Act, 29 U.S.C. §794.  This also constitutes violation of related federal employment discrimination law. 29 USCA §215 (a) 3, which prohibits employers from discharge or discriminate in any other manner against an employee because she has filed a complaint.

73.     To state a prima facie claim of retaliation under the Rehabilitation Act of 1973 and/or ADA, as well, a plaintiff must show (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal relationship between the employees' protected activity and the employer's adverse action. See Shaner, 204 F. 3d at 500.  The Court will find here sufficient allegations to sustain a cause of action for retaliation under the Rehabilitation Act, 29 U.S.C. §794, as well.  Ms. Molina filed EEO claims to obtain compliance with medical restrictions, as a result, the USPS in retaliation

20

took adverse action notifying her request could not be accommodated.  Only to later grant the lobby director position, without the proper compliance with her medical restrictions.  Until finally, the USPS gave the lobby director position to another employee shortly after Ms. Molina was force to leave her employment as a result of her employer's non-compliance with her medical restrictions.  In one instance, the employer by way of Supervisor Duran consistently violated her medical restrictions by removing a chair used by Ms. Molina, alleging it to be a "safety hazard" even after granting her request as lobby director.  Request that was granted, only after having filed her EEO claim.  This retaliatory conduct was contemporaneous with EEO activity and in retaliation for having filed a discrimination claim for USPS violation of her medical restrictions.

### COUNT VI: VIOLATION OF THE COMONWEALTH OF PUERTO RICO LAW

74.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

75.     Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without just cause in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a.  By creating a hostile work environment towards the plaintiff, the USPS as an employer forced the plaintiff to leave her employment.  The hostile environment was created by the willful actions of her Supervisor and Postmaster, to force her early retirement from work. Finally, the changes to her work environment in violation of medical restrictions and U.S. Department of Labor requirements, forced Ms. Molina to leave by way of constructive discharge.

76.     Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo").  It prohibits discrimination by employer based on an employee's age. 29 L.P.R.A. §146. Specifically it prohibits employers from taking adverse action against an employee because of

her age, with regards to the terms and conditions of her employment, refusing to keep or reincorporate employee into her job, willful deprivation of employment and/or taking adverse actions that negatively affect her employment status.  It also creates a presumption against the employer.  In the above referenced case, Ms. Molina belonged to a protected class of employees over 40 years of age, she was qualified for her job, was force to work in a hostile environment and leave because of her age and was later substituted by a younger person not protected by law.

77.     Puerto Rico's Act No. 44, approved on July 2, 1985, as amended, best known as Puerto Rico's Employment Opportunity Act for Disabled Persons ("Ley de Prohibición de Discrimen contra Impedidos"), also prohibits discrimination on the basis of disability and requires employer to make reasonable accommodation. Act No. 44 specifically prohibits employers from limiting and/or excluding a person with disability from work based solely on her disability.  Puerto Rico's Act No. 81, approved on July 27, 1996, ("Le de Igualdad de Empleo para Personas con Impedimentos"), also imposes a duty on the employer to make reasonable accommodation in the workplace. 29 L.P.R.A. §1401.  In the above referenced case, Ms. Molina was denied timely reasonable accommodation at work, and may have been the subject of disparate treatment.   In this case the USPS will fail to demonstrate their refusal to timely accommodate Ms. Molina medical restrictions, were motivated by other factors, other than her disability.  The employer will fail to demonstrate other non-discriminatory reason for refusing to accommodate Ms. Molina.

78.     Defendant violated this provision by refusing to grant Ms. Molina the accommodation needed to allow her to work with her doctor's restrictions, while the USPS routinely grants the same accommodation to others who were similar in their ability to work.

79.     Defendant also violated this provision by forcing Ms. Molina to take an unpaid leave, while she was subject to her doctor's restrictions, while not forcing other employees with

restrictions to take unpaid leave.  The drastic reduction in the number of working hours and the hostile work environment created by her Supervisor and Postmaster eventually forced her to leave her employment and constitutes wrongful termination.  The hostile work environment created by the USPS towards Ms. Molina was based solely on her age and her disability.

80.    Defendants are jointly and severally liable.

### COUNT VII: Intentional and Negligent Infliction of Emotional Distress

81.    Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

82.    Defendant intentionally and negligently inflicted serious emotional distress on the Plaintiff and her immediate family.  Defendant's conduct, as alleged herein, make them liable under Article 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142.

83.    Supervisor's and Postmaster's unlawful remarks at work towards Ms. Molina and intentional/or negligent listing her as being on a paid leave, while unpaid, constitutes the publication of false statements to patently harm the reputation of her character.  Ms. Molina is also entitled to compensation for the USPS defamation of her character.

84.    Defendant's actions and omissions were tortious and caused Plaintiff severe mental distress, anguish, humiliation, and shame, which should be compensated.  Defendant's conduct and omissions are the proximate cause of all damages complained of herein, in this Supplemental State Law Claim under Puerto Rico's Tort Statute.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendant's conduct was illegal and in violation of legal statutes herein identified, and that it grant Plaintiff the following remedies:

A. That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.

B. That this Honorable Court award Plaintiff reinstatement, back pay, all loss benefits, front pay and other equitable relief.

C. That this Honorable Court enjoins Defendant from engaging in additional discrimination and retaliation against Plaintiff.

D. That this Honorable Court award compensatory and general damages in the amount of $1,000,000.00 against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy for the mental and emotional distress and discomfort that Plaintiff suffered, as provided by the law and statutes of the United States and the Commonwealth of Puerto Rico.

E. That this Honorable Court award exemplary and punitive damages in the amount of $2,000,000.00 against all Defendants sued in their individual and/or representative capacities, or an amount to be determined at trial, in light of Defendants' willful, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiff's rights.

F. That this Honorable Court also awards monetary compensation for the emotional pain and suffering of her Spouse and siblings, as a result of Plaintiff's health deterioration due in part to USPS failure to timely comply with her medical restrictions.

G. That this Honorable Court award Plaintiff her costs, expenses, and attorney's fees.

H. Pre-judgment interest; and

I. Any other relief this Court deems equitable, just and appropriate.

## VII.   JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

In San Juan, Puerto Rico, on this 3[st]. day of August 2014.

Respectfully submitted,

/S/ Humberto Cobo-Estrella, Esq.
Humberto Cobo-Estrella, Esq.
**USDC-PR230108**

COBO-ESTRELLA H Law, LLC
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 200-2715
Email: hcobo@hcounsel.com

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2014, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whim counsel has entered an operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/S/ Humberto Cobo-Estrella, Esq.
*Attorney for the Plaintiff*